**Allen R. TURK, Petitioner–Appellant,**

v.

**Theo WHITE, Warden; Daniel E. Lungren, Attorney General of the State of California, Respondents–Appellees.**

No. 95–17319.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Jan. 21, 1997.

John P. Balazs and Connie M. Alvarez, Assistant Federal Public Defenders, Sacramento, California, for petitioner-appellant.

Ward A. Campbell, Deputy Attorney General, Sacramento, California, for respondents-appellees.

Before: GOODWIN, WALLACE, and RYMER, Circuit Judges.

WALLACE, Circuit Judge:

Turk, a California state prisoner, appeals from the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We affirm.

## I

On April 25, 1985, while serving a life sentence for a 1981 second degree murder conviction, Turk got into an argument with Correctional Officer Bradley. At Turk's request, Sergeant Washington held a meeting the next day with Bradley and Turk to discuss what happened. Though the parties disagree as to who started it, an altercation occurred in the office. Turk bit off part of Bradley's right earlobe and also bit Bradley's cheek, leaving a large wound. Turk also bit Washington's forearm.

A jury found Turk guilty of violating California Penal Code § 4500 (West 1982), which, in 1986, stated: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another ... by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole." The state trial court sentenced Turk to life without possibility of parole for nine years, plus additional time for ancillary counts. The court of appeal affirmed his sentence in an unpublished decision, and the California Supreme Court denied his petition for review.

In a 1993 unpublished disposition, our court granted habeas corpus vacating Turk's 1981 murder conviction because there was "a bona fide doubt as to the defendant's competency to stand trial." On retrial, Turk pled no contest to a charge of voluntary manslaughter and received credit for time served. Thus, Turk remains incarcerated solely due to the 1986 conviction for his assault on Bradley.

Shortly after our reversal, Turk filed a petition for federal habeas corpus relief to challenge his 1986 conviction. Turk dismissed this claim to exhaust his state remedies. Eight months later, Turk filed a second petition for habeas corpus relief, and it was referred to a magistrate judge. The magistrate judge's findings and recommendations urged a denial of Turk's petition. The district judge denied a request for an evidentiary hearing, accepted the magistrate

judge's findings and recommendations, and denied Turk's petition for a writ of habeas corpus.

■■ We review de novo the district court's denial of Turk's petition for habeas corpus relief. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). We review for an abuse of discretion the district court's denial of Turk's request for an evidentiary hearing. *United States v. Andrade–Larrios,* 39 F.3d 986, 991 (9th Cir.1994). Since Turk filed his petition for federal habeas corpus relief before April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (amendments to 28 U.S.C. §§ 2241–2255) does not apply to this case. *Jeffries v. Wood,* 103 F.3d 827 (9th Cir.1996).

## II

■ To be successful in his claim of ineffective counsel, Turk has two separate burdens of proof:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) *(Strickland).*

Turk first argues that Mr. Dorfman, his counsel for the 1986 trial, rendered ineffective assistance by not accepting the trial court's offer to bifurcate the trial. This would have divided the trial into two proceedings: one to determine whether he was guilty of assaulting Bradley, and one to determine whether Turk qualified for section 4500 because he was serving a life sentence. Dorfman refused the offer because it "would make a needlessly long trial of the thing." He also stated that "it would seem to me a

needless act. They are going to prove you have been convicted of these felonies to be in Folsom [State Prison]."

■ Even if we assume that Dorfman's refusal to bifurcate constitutes deficient performance, Turk cannot establish prejudice. Because Turk chose to testify, the State could impeach his testimony with his prior felony convictions. Thus, the jury still would have learned of Turk's prior convictions for second degree murder, rape, and forced oral copulation. Bifurcation or no bifurcation, the jury would have learned of Turk's violent past.

Turk contends that the trial judge would have ruled that those prior convictions were "more prejudicial than probative" under California Evidence Code § 352, and would have prevented the jury from hearing them. However, nothing in the record suggests that the trial court would have disallowed those prior convictions, all violent felonies. Without more, Turk cannot demonstrate that Dorfman's failure to bifurcate the trial "deprive[d] the defendant of a fair trial." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

## III

Turk also contends that Dorfman provided ineffective assistance of counsel by not investigating an insanity defense. Turk asserts that he told Dorfman of his mental problems, yet Dorfman ignored Turk's claim of incompetency and pursued only a theory of self-defense. Turk argues that Dorfman's refusal even to investigate Turk's competency violated his Sixth Amendment right to competent counsel.

Dorfman explained that he elected the self-defense theory because he believed it was Turk's strongest defense. Evidence existed that Bradley, not Turk, initiated the fight, and Bradley admitted that he acted unprofessionally on the day of the prior dispute which led up to the meeting and altercation. Dorfman stated that he refused to pursue the mental incompetency defense because it "would have been inconsistent with a defense based upon the facts as presented by both [Turk] to me and as contained within the officers' reports."

Turk's present counsel conceded at oral argument that pursuit of both the self-defense theory and the mental incompetency theory would be unsound. The California Jury Instructions on self-defense and mental incompetency confirm the conclusion of Turk's counsel. In 1986, CALJIC 5.30, the instruction for "self-defense against assault," stated that Turk would be innocent of assault if "as a reasonable person, he ha[d] grounds for believing and d[id] believe that bodily injury [wa]s about to be inflicted upon him." CALJIC 4.00, the instruction for an insanity defense, required the jury to find that Turk "was incapable of knowing or understanding the nature and quality of his act."

■ Thus, the self-defense theory required Turk to prove that he acted reasonably, while the insanity defense required Turk to prove that he did not understand what he was doing. Pursuit of these conflicting theories would have confused the jury and undermined whatever chance Turk had of an acquittal. Since we "apply[ ] a heavy measure of deference to counsel's judgments," *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, we conclude that Dorfman did not provide deficient counsel by pursuing solely the self-defense theory. Consequently, the district court did not abuse its discretion in rejecting Turk's request for an evidentiary hearing. Even if Turk did tell Dorfman about his mental problems, Dorfman's pursuit of only the self-defense claim was reasonable.

Turk contends that Dorfman's failure to investigate the merits of the mental incompetency defense constitutes *Strickland* error. Yet *Strickland*, which arose from a "failure to investigate" claim, held otherwise:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.
>
> . . . .
>
> ... For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason

to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Id.* After Dorfman reviewed the preliminary facts of the case, he reasonably decided that he would pursue only a theory of self-defense. Even if Turk told Dorfman of his mental problems, Dorfman did not need to investigate Turk's competency. As *Strickland* suggests, once Dorfman reasonably selected the self-defense theory, his duty to investigate the competency defense, which directly conflicted with the self-defense theory, ended. *See Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (holding that once counsel "made the reasonable strategic decision" not to elicit testimony from a witness, "there was no need to investigate evidence corroborating that testimony"), *cert. denied*, — U.S. ——, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996).

The viability of Turk's self-defense theory distinguishes this case from *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir.1994). In *Sanders*, counsel unreasonably selected alibi and "inside shot" defense theories, and did not investigate a mistaken identity theory. We said in *Sanders* that counsel's refusal "to listen to another person's confession to a crime one's client is accused of committing is unfathomable," and thus counsel's failure to investigate the mistaken identity theory violated the Sixth Amendment. *Id.* at 1460.

Dorfman was never presented with a decision as easy as the one in *Sanders*. Rather, he had to choose between two available yet conflicting defenses. Here, Dorfman's selection of the self-defense theory was reasonable and obviated his need to investigate Turk's claims of incompetency, for once counsel reasonably elects to pursue one defense theory, "the need for further investigation [of the other theory] may be considerably diminished or eliminated altogether." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

IV

Turk cites *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575

(1988), in support of his argument that his 1986 sentence for attacking Bradley violates the Eighth Amendment, because it was based on his serving a life sentence which was later vacated. *Johnson* holds that a state cannot use an invalid conviction as an aggravating circumstance in a capital case, for the vacated conviction "provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 586, 108 S.Ct. at 1987. That differs from this case, where section 4500 criminalizes an assault on a guard by a life sentence prisoner, but does not enhance the penalty on the basis of a prior conviction.

More on point is *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), which held that a sentence based on one's status as an ex-felon may stand though the underlying conviction is invalid. 18 U.S.C.App. § 1202(a)(1) criminalized an ex-felon's possession of a handgun. Lewis argued that his underlying felony conviction was infirm, so penalizing him as an ex-felon violated his equal protection rights. The Court concluded that section 1202(a)(1) did not distinguish valid convictions from invalid convictions. *Id.* at 62, 100 S.Ct. at 919. The Court then held that section 1202(a)(1) could stand, because "Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Id.* at 66, 100 S.Ct. at 921. We have identified this distinction by stating that "*Lewis* is inapplicable where prior convictions are used to determine the punishment, rather than to define the offense." *United States v. Clawson,* 831 F.2d 909, 914 (9th Cir.1987), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 323 (1988). *Clawson*'s distinction of *Lewis* does not apply here since section 4500 uses Turk's life sentence to define the offense, rather than to enhance any punishment.

■ We are persuaded by *Wells v. California,* 352 F.2d 439 (9th Cir.1965), *cert. denied,* 384 U.S. 1009, 86 S.Ct. 1968, 16 L.Ed.2d 1021 (1966), which held that section 4500's purpose was to protect prison officials and inmates, *id.* at 443, and concluded:

> All that is required by Section 4500 et seq. is that the prisoner be serving a sentence.

The statutes do not require that the conviction and sentence be a valid one. If the purpose of the statute is to be achieved, and obviously the purpose is a sound one, it makes no difference why the prisoner has been confined, or that he may be legally entitled to release.

*Id.* at 442 (quotation marks omitted). Although *Wells* analyzed an earlier version of section 4500, *id.* at 441 n. 2, nothing suggests a different result here. Like the statute in *Lewis,* section 4500 at the time of Turk's 1986 trial did not exclude invalid convictions. It included "[e]very person undergoing a life sentence in a state prison of this state." This classification survives rational basis review; the legislature could conclude that prisoners serving life sentences, valid or not, need strong incentives not to attack prison guards. Section 4500 uses Turk's status as a prisoner serving a life sentence to define an offense, rather than to enhance a penalty. Therefore, the equal protection analysis of *Lewis,* and not the Eighth Amendment penalty enhancement language of *Johnson,* controls this issue and defeats Turk's claim.

An unpublished disposition addresses Turk's nonconstitutional claims.

AFFIRMED.