Charles Harvey Joseph FRANKLIN, Petitioner–Appellant,

v.

Dan JOHNSON, Superintendent, Respondent–Appellee.

No. 00–36108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 2002.

Filed May 30, 2002.

Christoper J. Schatz, Assistant Federal Public Defender, Portland, OR, for the petitioner-appellant.

Erika L. Hadlock, Office of the Attorney General of the State of Oregon, Salem, OR, for the defendant-appellee.

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

Opinion by Judge BERZON; Concurrence by Judge O'SCANNLAIN.

## OPINION

BERZON, Circuit Judge.

Charles Harvey Joseph Franklin appeals the denial of his petition for habeas relief under 28 U.S.C. § 2254. After a stipulated-facts bench trial, Franklin was convicted of one count of sodomy in the first degree and sentenced to 9 years, 8 months in prison and 3 years of supervised release. Franklin unsuccessfully appealed his conviction in the state courts and then filed a *pro se* petition under 28 U.S.C. § 2254, arguing only that his trial counsel was ineffective for failing to investigate or pursue a possible mental state defense. The district court denied the claim on the merits and dismissed Franklin's habeas petition. Franklin appeals to this court.

Respondent ("the state") contends for the first time on appeal that Franklin's claim was not exhausted in state court and has been procedurally defaulted. We hold that the ineffectiveness claim is not procedurally barred, but affirm the denial of the habeas petition on the merits.

## I. BACKGROUND

In April of 1992, Franklin was charged, in a case we will call *"Franklin I,"* with raping his oldest stepdaughter. Represented by court-appointed attorney David

Haasenstab, Franklin pleaded no contest to the rape charges. When asked in the pre-sentencing interview whether he could have sexually abused his stepdaughter, Franklin responded that he did not know because, as an alcoholic, he sometimes drank so much that he could not remember anything. Franklin did adamantly insist that his stepchildren did not lie.

The Pre–Sentence Report ("PSR") in *Franklin I* stated that Franklin had been treated for alcohol abuse, that he had attempted suicide, and that his psychiatric evaluation revealed he was suffering from pedophilia and from an anti-social personality disorder. The report included the victim's statement that "sometimes her dad had been drinking when he does things to her." The PSR also noted that Franklin did not seek any treatment until the allegations of abuse had surfaced and that "[t]he fact that Franklin has a chemical abuse problem does not excuse or mitigate his sexual deviancy. It only identifies him as a sex offender with a chemical addiction problem." Franklin was sentenced in *Franklin I* to 58 months in prison and 36 months of supervised release.

Franklin was later charged, in a case we will call "*Franklin II*," with several counts of sexual misconduct involving his younger stepdaughter. Haasenstab again represented Franklin, who pleaded no contest to sodomy in the first degree. In August 1992, Franklin was sentenced in *Franklin II* to 55 months in prison, to run consecutively to the term imposed in *Franklin I*.

A month after Franklin's second conviction, his stepson reported to police that he had also been sexually abused by Franklin. Franklin was charged with six counts of sodomy in the first degree against a child under 12 years of age. *See* Or.Rev.Stat. § 163.405(1)(b). The indictment charged two counts each, for the years 1989, 1990, and 1991, of engaging in or causing his stepson to engage in acts of deviate sexual intercourse.

The court appointed Charles Berg, a law firm associate of Haasenstab's, to represent Franklin. Represented by Berg, Franklin moved to dismiss the charges, arguing former jeopardy and double jeopardy violations under the state and federal constitutions, respectively. The contention was that bringing the charges involving Franklin's stepson after the state had obtained the two prior convictions involving his stepdaughters had a negative impact on his ability to defend himself.

At the hearing on Franklin's motion to dismiss the indictment, the government stated that it did not obtain any evidence that Franklin had sexually abused his stepson until the child reported the abuse to police on September 10, 1992, after Franklin's earlier convictions. The government also explained that "[u]sually, in fact, almost always, disclosure by a child is a condition precedent to initiating a prosecution." Without a report by the victim, the state could only prosecute if it had "some outside source of evidence that the crime had occurred," yet in this case, there were no photographs, no eye-witnesses other than Franklin and his stepson, and no physical evidence. Franklin did not contest the state's representations.

The judge denied the motion to dismiss. Finding "no indication that no matter what sort of investigation had been conducted, that there would have been evidence prior to August 18th of 1992 that could have served as a basis for initiating a prosecution," the court held that "there is no bar to this present prosecution based on either of the earlier prosecutions."

After failing to obtain dismissal, Franklin agreed to a stipulated-facts trial. Franklin conceded that if witnesses testified, it would be established beyond a reasonable doubt that while under the influ-

ence of alcohol he had engaged in unlawful deviate sexual intercourse—sodomy—with his stepson in 1989. In exchange, the prosecution agreed to drop five of the six counts alleged in the indictment and to recommend that the sentence run concurrently with the sentences imposed in *Franklin I* and *Franklin II*. Franklin waived his right to a jury trial, and the judge found Franklin guilty of sodomy in the first degree.

At sentencing, Berg argued that Franklin should receive a sentence at the low end of the state's guidelines range of 116–120 months because he had received inpatient treatment for substance abuse, had attempted suicide, and "ha[d] no memory of these criminal acts with the children." The judge did sentence Franklin at the low end, to 9 years, 8 months in prison and 3 years of supervised release, and ordered that the sentence run concurrently with the previously imposed sentences.

Franklin then filed a *pro se* habeas petition in state court, contending among other things that he had received ineffective assistance of counsel because Berg "never advised [him] of any defenses, but insisted Petitioner plead guilty and/or nolo contendre [sic]." Both Franklin and Berg testified at the state evidentiary hearing. When asked what defenses Berg should have discussed with him, Franklin responded: "I told my attorney I was innocent of this charge and I asked him what we could do to bring this to trial, and my attorney didn't do anything except ask me to take a no contest plea."

Berg testified that the reason he advised Franklin to agree to a stipulated-facts trial was to preserve an appeal on former jeopardy grounds. Berg never filed a direct appeal on Franklin's behalf, however, and could not recall doing anything to ensure that Franklin's appeal rights were preserved. When asked if he considered a drug and mental state defense based on

drug and alcohol addiction, Berg testified: "I recall talking with Mr. Franklin about it and in particular, that the child reported that usually these activities occurred after Mr. Franklin had plenty to drink. And that's what I remember about it." Berg did interview Franklin's stepson in preparation for trial but never interviewed the victim's mother, Franklin's wife at the time. Berg did not request a pre-sentence investigation or engage any mental health expert.

The state trial court denied relief, finding that "Defense Counsel did cover potential defenses with Petitioner although Defense Counsel cannot recall any discussion about an alibi defense. Petitioner was a drug addict and alcoholic and there was a possibility of a potential mental defense." The trial court concluded:

> Defense Counsel under both Federal and State Constitutional standards exercised professional skill and judgment on behalf of the Defense. There has been no showing that Counsel's assistance was unreasonable or that Petitioner was prejudiced or that the result of the proceeding would have been different with respect to any of Petitioner's allegations.

The Oregon Court of Appeals granted the state's motion to affirm without opinion, and the Oregon Supreme Court denied Franklin's petition for review.

Franklin then filed a petition for habeas relief under 28 U.S.C. § 2254, raising one claim—that his counsel was ineffective for failing to pursue a mental state defense. The magistrate judge to whom the case was referred concluded, based on the state court record, that "there was insufficient evidence to put counsel on notice that petitioner was suffering from a mental defect or disease." Despite the evidence of alcohol abuse and suicidal tendencies, the magistrate judge determined, the absence of evidence of a history of mental illness,

hospitalization or medication for mental illness, or highly unusual behavior precluded a finding that counsel was on notice of a possible mental state defense. The magistrate judge concluded that "any failure to investigate petitioner's mental condition by defense counsel was not unreasonable," both because there was no evidence that Franklin's alcohol or drug abuse resulted in a mental disease or defect, and because, even if there were such evidence sufficient to put counsel on notice that a mental state defense was a possibility, counsel "reasonably chose to pursue a defense based on prior jeopardy." The magistrate judge decided, last, that if there was any deficient representation, no prejudice resulted. The district court adopted the Findings and Recommendation of the magistrate judge in their entirety, and Franklin timely appealed.

## II. PROCEDURAL DEFAULT

Before addressing the petition on its merits, we must address the government's threshold argument that Franklin is procedurally barred from raising his claim of ineffective assistance.

Franklin filed his petition on January 8, 1998. We therefore review his petition under the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). *Van Tran v. Lindsey*, 212 F.3d 1143 (9th Cir.2000).

■ For the first time on appeal, the state argues that Franklin is procedurally barred from raising the question he seeks to litigate in his federal habeas petition. The state contends that Franklin never raised in state court the argument that Berg failed to investigate a mental state

defense and cannot do so now because Oregon has a rule that a petitioner can file only one state post-conviction petition. *See* Or.Rev.Stat. § 138.550(3).[1] More specifically, the state maintains that Franklin's claim of ineffective assistance based on a failure to advise him of available defenses was too general to fairly present the mental state defense argument to the state court. We conclude that the state waived its procedural default argument.

For petitions filed before AEDPA's effective date, the well-settled rule was that the state waived any procedural bar by failing to raise the issue in response to the habeas petition. *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) ("[P]rocedural default is normally a defense that the state is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter."); *Jenkins v. Anderson*, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (declining to consider the state's procedural default argument because it was not raised below); *Gonzalez v. United States*, 33 F.3d 1047, 1049 (9th Cir.1994) (failure to raise procedural default in the district court constituted a waiver of the issue); *Dubria v. Smith*, 224 F.3d 995, 1000–01 (9th Cir.2000) (en banc); *see also, e.g., United States v. Barron*, 172 F.3d 1153, 1156–57 (9th Cir.1999) (en banc), and cases cited therein. The state maintains that AEDPA requires that we abandon our prior rule and reach the state's procedural bar argument on appeal, even though the argument was not presented to the district court. We see nothing in AEDPA that addresses this question and so may not reconsider our precedent. *See, e.g., Hart v. Massanari*, 266 F.3d 1155, 1171 & n. 28 (9th Cir.2001).

1. Or.Rev.Stat. § 138.550(3) provides:
   All grounds for relief claimed by petitioner in a[state habeas] petition must be asserted in the original or amended petition, and any grounds not so asserted are deemed

   waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

The state relies upon 28 U.S.C. § 2254(b)(3) for the proposition that AEDPA undermines our earlier precedent concerning the state's waiver of procedural bar principles on habeas. That section specifies that "[a] state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the state, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

Section 2254(b)(3), as is apparent, mentions exhaustion alone as a defense that the state can waive only expressly. The state nonetheless contends that § 2254(b)(3) precludes the application of ordinary implicit waiver rules to the habeas procedural default doctrine.

There is no basis for discerning in AEDPA's complete silence on the question an implicit change in the law regarding waiver of procedural default arguments. Exhaustion and procedural default are distinct concepts in the habeas context. *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir.1990) (finding that the government waived the procedural default argument by contending only that the petitioner had failed to exhaust administrative remedies, which is "quite a different argument, of course, from asserting procedural default"). The two doctrines developed independently and on different grounds, apply in different situations, and lead to different consequences.

Exhaustion began as a judicially-created doctrine but has long been codified in the federal habeas statutes. As early as *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the Supreme Court concluded that "as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (citing *Royall*, 117 U.S. at 251, 6 S.Ct.

734). Congress codified the exhaustion requirement in 1948, in 28 U.S.C. § 2254. *Id.* at 516, 102 S.Ct. 1198. "The exhaustion doctrine is principally designed 'to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" *Id.* at 518, 102 S.Ct. 1198.

█ The procedural default doctrine was also judicially developed but has never been codified by Congress in the habeas statutes. First announced as a broad concept in *Wainwright v. Sykes*, 433 U.S. 72, 97, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the procedural bar doctrine "has its historical and theoretical basis in the 'adequate and independent state ground' doctrine." *Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citing *Wainwright*, 433 U.S. at 78–79, 97 S.Ct. 2497); *see also Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 80 L.Ed. 158 (1935). The adequate and independent state ground doctrine provides that federal courts "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both independent of the merits of the federal claim and has an adequate basis for the court's decision." *Harris*, 489 U.S. at 260, 109 S.Ct. 1038.

█ The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. 28 U.S.C. § 2254(c). In contrast, the procedural default rule barring consideration of a federal claim "applies only when a state court has been presented with the federal claim," but declined to reach the issue for procedural reasons, or "if it is clear that the state court would hold the claim procedurally

barred." *Harris,* 489 U.S. at 263 & n. 9, 109 S.Ct. 1038.

■ If a petitioner's claims are unexhausted, the district court can dismiss the petition without prejudice to give the prisoner a chance to return to state court to litigate his unexhausted claims before he can have the federal court consider his claims. *See Rose,* 455 U.S. at 518, 102 S.Ct. 1198. When a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default, however, the district court dismisses the petition because the petitioner has no further recourse in state court. *See Reed,* 468 U.S. at 9, 104 S.Ct. 2901.

As the Fifth Circuit has noted, these long-established differences between the exhaustion requirement and the procedural default doctrine preclude any conclusion that Congress implicitly intended to reach the latter when it addressed waiver of the former in AEDPA. *Jackson v. Johnson,* 194 F.3d 641, 652 n. 35 (5th Cir.1999)[2] ("Although a 'State shall not be deemed to have waived the exhaustion requirement ... unless the State, through counsel, expressly waives the requirement,' *see* 28 U.S.C. § 2254(b)(3), the exhaustion requirement is related but distinct from that of procedural default."). We conclude, as did the Fifth Circuit, that 28 U.S.C § 2254(b)(3)'s reference to exhaustion has no bearing on procedural default defenses. Our pre-AEDPA precedent regarding waiver of procedural bars therefore remains good law.

The partial concurrence and concurrence in the judgment maintains that the particular kind of procedural bar here at issue is not meaningfully different from an exhaustion defense, and so should be encompassed in the AEDPA provision precluding waiver of the exhaustion requirement. We do not agree.

■ The exhaustion requirement "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). If a petitioner failed to present his claims in state court and can no longer raise them through any state procedure, state remedies are no longer available, and are thus exhausted. *See id.; O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

■ Ordinarily, where an exhaustion defense is raised, the petitioner can cure the defect by exhausting thereafter. *Rose,* 455 U.S. at 518, 102 S.Ct. 1198. Allowing the petitioner to do so serves the comity purposes of the exhaustion requirement by permitting the state to consider first the issue raised. *O'Sullivan,* 526 U.S. at 844, 119 S.Ct. 1728. AEDPA then interposes a deferential standard of review of the resulting state court decision. 28 U.S.C. § 2254(d) (to warrant reversal, a claim adjudicated on the merits in state court must have "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

---

**2.** In support of its conclusion that § 2254(b)(3) does not require an express waiver of procedural default, *Jackson* quoted Justice Stevens' dissent in *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (Stevens, J., dissenting), which discussed important distinctions between exhaustion and procedural default:

To be sure, the fact that a prisoner has failed to invoke an available state procedure may provide the basis for a conclusion that he has waived a claim. But the exhaustion inquiry focuses entirely on the availability of state procedures at the time when the federal court is asked to entertain a habeas petition.... The presence or absence of exhaustion, in sum, tells us nothing about whether a prisoner has defaulted his constitutional claims.

*Id.* at 855–56, 119 S.Ct. 1728.

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); *id.* § 2254(e)(1) (applying a presumption of correctness to state court determinations of factual issues).

Here, however, Oregon is *refusing* to allow Franklin to exhaust his claim, because he did not do so in accord with Oregon's procedural rules, and arguing that we should not hear it either. By doing so, Oregon is not invoking its right to have first crack at any constitutional issues, and to enjoy the deferential standard of review accorded by AEDPA with regard to state court determinations of such issues. Instead, as is true whenever a procedural default is asserted in a habeas proceeding, the state is asking this court to respect its state-court procedural reason for *failing—ever—*to adjudicate a constitutional issue arising from a criminal conviction.

Ordinarily, of course—absent some applicable exception—we do respect the state court's procedural rules. But here, the state itself has in effect procedurally defaulted, by failing to inform the district court and the petitioner of the asserted procedural reason why petitioner may not be heard in state or federal court. We cannot see any basis for distinguishing this kind of procedural bar from any other where that is the case, the partial concurrence's suggestion to the contrary notwithstanding.

■ The partial concurrence also faults us for reaching the procedural bar waiver issue at all, noting that AEDPA expressly permits courts to deny habeas petitions on the merits despite a failure to exhaust. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Of course, as we do not agree that this case presents an exhaustion issue, we do not agree that AEDPA directly addresses the proper course in the current circumstances.

■ We do agree, however, that appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar. See *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. It is wasteful of both our resources and that of the litigants to remand to the district court a case in which that court improperly found a procedural bar, if the ultimate dismissal of the petition is a foregone conclusion."). Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same. See, e.g., *id.* ("Judicial economy might counsel giving the *Teague [v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

In this instance, however, because the district court *did* reach the merits—indeed, was presented with no basis for not resolving them—we are not faced with the need to multiply judicial proceedings by remanding to the district court. Although we ultimately conclude that petitioner's merits contentions fail, reaching that conclusion requires considerable analysis, as the ensuing section of this opinion illustrates. Moreover, the question concerning whether our prior precedent regarding waiver of procedural bars survives AED-

PA is one best resolved sooner rather than later, so that states will be on notice and take care to avoid such waivers in the future. Our discussion of the waiver matter, consequently, is a considered one, not an excursion into abstract theory as the concurrence suggests.

In this case, the state provides no explanation whatsoever for its failure to raise a procedural default argument in the district court, much less any extraordinary reason for reaching the procedural default defense despite the state's failure to raise the issue below. *See Barron,* 172 F.3d at 1157 (finding no extraordinary circumstances present to "suggest that justice would be served by overlooking the government's omission" and therefore treating the procedural default as waived). Consequently, we decline to reach the state's argument that Franklin did not adequately raise in the state courts the issue he presented to the district court and argues here as well.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■■■■ Under AEDPA, a petition for habeas corpus challenging a state conviction may be granted only if the state court's decision is "contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In implementing this standard, the requisite inquiries are, first, whether the conclusion reached by the state court was erroneous, and second, whether the state court decision was contrary to or an unreasonable application of clearly established Supreme Court law.[3] *Van Tran,* 212 F.3d at 1149. If—as we ultimately conclude was the case here—the state court reached the correct result with respect to petitioner's claim of constitutional violation (even if on erroneous reasoning),[4] that is the end of our inquiry.

### A. Application of the Strickland Standard

Under the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Franklin, to prevail, must establish that (1) "counsel's performance was deficient, *i.e.,* that it fell below an 'objective standard of reasonableness' under 'prevailing professional norms'"; and (2) "he was prejudiced by counsel's deficient performance, *i.e.,* that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'." *Babbitt v. Calderon,* 151 F.3d 1170, 1173 (9th Cir.1998) (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052).

### 1. Deficient Representation[5]

■■■■ Under Oregon law, the mens rea element of a sodomy offense requires that

---

**3.** The Oregon Court of Appeals and the Oregon Supreme Court denied Franklin's habeas petition without comment. This court therefore must look to the last reasoned decision of the state court as the basis of the state court's judgment. *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000). Here, the last reasoned decision of the state court was the trial court's denial of Franklin's petition for post-conviction review.

**4.** We note that here the state trial court may well have applied a standard inconsistent with Supreme Court law: As to prejudice, the court stated that there was "no showing ...

that the result of the proceeding would have been different." Under *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the petitioner need not show that the outcome of the trial *would* have been different, but only that there is a "reasonable probability" that it would have been different. *See Williams v. Taylor,* 529 U.S. 362, 405–06 (2000) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

**5.** Cases applying the *Strickland* standard tend to refer to counsel's deficient "performance." We prefer to discuss the quality of "representation," to assure that we focus on the attor-

**1234**

the defendant act "for the purpose of arousing or gratifying the sexual desire of either party." Or.Rev.Stat. §§ 163.405, 163.305(1), (6); *see also State v. Herrera*, 286 Or. 349, 594 P.2d 823, 830 (1979). Oregon admits evidence of intoxication, drug use, and chemical dependence if such evidence "is relevant to negative an element of the crime charged." Or.Rev.Stat. § 161.125(1). In addition, "a mental disease or defect constituting insanity under ORS 161.295 is an affirmative defense." *Id.* § 161.305. Section 161.295 provides:

(1) A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of the law.

(2) ... the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include abnormality constituting solely a personality disorder.

*Id.* § 161.295.

■ Evidence of drug dependence alone is not sufficient evidence of a mental disease to justify giving an instruction to that effect. *Herrera*, 594 P.2d at 823. Some repeated criminal or antisocial activities, however, can evidence a mental disease or defect if those activities are attributable to a mental or psychological condition. *Osborn v. Psychiatric Security Review Bd.*, 325 Or. 135, 934 P.2d 391 (1997) (pedophilia is not excluded from the definition's exception for antisocial conduct).

■ Franklin contends that, given these standards, it was objectively unreasonable for Berg not to investigate a mental state defense. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052, and "must, at a minimum conduct a reasonable investigation enabling him to make informed decisions about how to best represent his client," *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994). "To determine the reasonableness of a decision not to investigate, the court must apply 'a heavy measure of deference to counsel's judgments.'" *Babbitt*, 151 F.3d at 1173 (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052).

Berg did have notice of facts sufficient to give rise to a duty to investigate the possibility of a mental state defense. He should have been aware of Franklin's substance abuse problems, his pedophilia, and his suicide attempts, because they were mentioned in the PSR prepared in *Franklin I*. Berg should have inquired into the records of the earlier proceedings.[6] At sentencing, Berg referred to Franklin's substance abuse and other psychological problems and noted that Franklin had no memory of abusing his stepson, indicating that Berg did in fact know of the pertinent matters.

There is no evidence that Berg took any action at all to pursue a mental state defense, including "even a minimal investigation in order to make an informed decision regarding the possibility of a defense

ney's true obligation. That obligation, of course, is to forward one's client's interest as legally appropriate. "Performance" suggests, instead, a show or a display—rather than the substance—of representation. To suggest that we are judging a "performance" is to suggest, inaccurately, that we are a disinterested audience rather than judges with empa-

thy for and understanding of the difficult representational dilemmas attorneys face.

**6.** Because his law firm associate had represented Franklin in both prior proceedings, access to these records should have been available without leaving his office.

based on mental illness." *Seidel v. Merkle,* 146 F.3d 750, 756 (9th Cir.1998). In light of his knowledge, Berg's failure to pursue in any way the possibility of a mental state defense was objectively unreasonable. *See id.* at 755–56 (counsel ineffective because, despite "abundant signs in the record that Seidel suffered from mental illness," petitioner's counsel "failed to conduct any investigation at all into his client's psychological history and therefore neglected to pursue a potentially successful defense").

■ Berg's only explanation of his strategy was that he intended to preserve an appeal on the double jeopardy claim. But a mental health defense and a double jeopardy claim are not mutually exclusive, and Berg did not in fact file the double jeopardy appeal nor preserve Franklin's ability to do so.

■ Moreover, Berg should have known from the outset that the double jeopardy defense could not be successful. The offenses against Franklin's three stepchildren occurred at different times and involved different victims. Each offense contained an element not necessary to prove the other offense. The incidents therefore could not be considered the "same offense" for purposes of the Double Jeopardy Clause. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Although the Oregon former jeopardy rule is broader than federal law on double jeopardy, Berg should also have known that this prosecution did not violate it. Oregon law provides: "No person shall be

separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court." Or.Rev.Stat. § 131.515(2). Berg knew that while Franklin was being prosecuted for the first two charges against his stepdaughters, the prosecution had no evidence on which to prosecute Franklin for incidents involving his stepson. *See State v. Knowles,* 289 Or. 813, 618 P.2d 1245 (1980) (despite suspicion that other children in the home were being sexually abused, there was no evidence on which to prosecute for acts against them); *State ex rel Juvenile Department v. Nelson,* 124 Or.App. 562, 863 P.2d 497 (1993) (prosecutor's suspicion that other wrongful acts occurred did not constitute reasonable knowledge at the time of the first prosecution).

To say that Berg had little chance of establishing a state or federal double jeopardy violation is not to fault him for attempting to raise the defense.[7] The fact remains, however, that the double jeopardy/former jeopardy arguments are fatally weak.

■ Berg's decision to pursue the weak double jeopardy defense to the exclusion of all other possible defenses constituted deficient representation. To be sure, once counsel reasonably elects to pursue one defense theory, "the need for further investigation [of the other theory] may be considerably diminished or eliminated altogether." *Strickland,* 466 U.S. at

---

7. The state argues that Berg's decision to pursue this defense "apparently convinced the trial court to give petitioner the minimum sentence available under the guidelines and to make that sentence run concurrent with other sentences petitioner was already serving." At sentencing, the trial court did state that "if these prosecutions had occurred or had be-

gun on or about the same time, we would probably be looking at concurrent time on these charges." The concurrent sentence, however, was part of the agreement with the state and presumably had nothing to do with the trial court's view on the double jeopardy argument.

694, 104 S.Ct. 2052. When the selected defense is incompatible with the defense that counsel chose not to investigate or pursue, this principle is quite compelling. *See, e.g., Turk v. White,* 116 F.3d 1264, 1267 (9th Cir.1997). But where, as here, the defenses are entirely consistent with each other, and where the relied-upon defense had already been rejected by the trial court as "not well taken," the decision not to investigate before deciding whether to pursue a given trial strategy cannot be deemed reasonable. *Cf. Sanders,* 21 F.3d at 1460 (finding counsel's decision to pursue weak defenses based on an alibi and a theory that the shooter was inside the house instead of outside was unreasonable when a "far more plausible defense" of mistaken identity was available).

Filling in an explanation Berg did not provide, the state argues that Franklin wanted to go to trial and say he did not commit the offense, so his attorney could not also argue that Franklin committed the act but without the requisite intent. Once Franklin agreed to a stipulated-facts trial, however, he gave up any argument that he did not commit the act. At that point, whatever Franklin's earlier position, a mental state defense was no longer inconsistent with his strategy.

The state further contends that Berg had no indication that any mental defect caused by pedophilia or substance abuse rendered Franklin unable to conform his conduct to the law, so Berg's failure to investigate was reasonable. Berg was aware that Franklin had no memory of abusing his stepchildren yet believed the assertion that he did; that he had been diagnosed with alcohol dependence and pedophilia; and that he had attempted suicide. These facts should have led Berg, at a minimum, to investigate the *possibility* of meeting the applicable legal standard— for example, by engaging expert psychological assistance.

■ Instead, Berg negotiated a deal with the state that, in exchange for agreement to a stipulated-facts trial, the state would dismiss some of the counts and recommend concurrent sentencing. A reasonable attorney may well have concluded that such a deal was better for his client than attempting to present a somewhat dubious, unsympathetic mental state defense. Jurors may well, for example, look skeptically at a claim that someone who is psychologically prone to sexually abuse children should not be found guilty of a crime when he does commit such abuse. Berg did not, however, contend that he made such an informed, calculated decision. Rather, for all that appears in the record, Berg simply failed to consider or to investigate the viability of a mental state defense.

The state maintains, finally, that at the time of Franklin's trial the status of drug and alcohol addiction as a mental disease or defect was unclear, and that it is still unsettled. It is true that no Oregon case holds that alcohol or drug addiction is a mental disease or defect, but none holds otherwise either. *See Cramer v. Psychiatric Security Review Bd.,* 122 Or.App. 290, 857 P.2d 232 (1993) (refusing to address whether substance and alcohol abuse constituted a mental disease or defect); *Hanson v. Psychiatric Security Review Bd.,* 156 Or.App. 198, 965 P.2d 1051 (1998) (stating that alcoholism is not a personality disorder or an abnormality "manifested only by repeated criminal or otherwise antisocial conduct" excluded from the definition of mental disease or defect under Or.Rev.Stat. § 161.295(2)). Here, the state trial court noted that there was a "possibility" of a mental state defense, and indeed there was at least that—a possibility.

In sum, Berg neither provided any strategic explanation for his failure to pursue a

mental state defense nor demonstrated that he considered the defense and decided that it was not viable. We therefore conclude that his failure to investigate the defense was objectively unreasonable and constituted deficient representation.

## 2. Prejudice

That Berg's representation was objectively unreasonable is not sufficient to establish deprivation of Franklin's Sixth Amendment right to counsel "if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. To establish prejudice, Franklin must establish "a reasonable probability"—that is, a "probability sufficient to undermine confidence in the outcome"—that, but for counsel's deficient performance, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

The state stipulated that Franklin was under the influence of alcohol at the time he sexually abused his stepson. Also, the state court concluded that Franklin "was a drug addict and alcoholic and there was a possibility of a mental state defense."

Still, the record does not establish a reasonable probability that Franklin's alcoholism or any other mental disease or defect left him "lack[ing] substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of the law." Or.Rev.Stat. § 161.295. Nor is there any evidence in the record to establish a reasonable probability that Franklin's intoxication made him incapable of forming the requisite specific intent for a sodomy conviction. *See* Or.Rev.Stat. §§ 163.405, 163.305(1), (6) (requiring that a sodomy offender act "for the purpose of arousing or gratifying the sexual desire of either party"). In particular, the post-conviction record contains no testimony whatsoever, expert or otherwise, concerning the impact of any mental disease or defect on Frank-

lin's commission of the crime with which he was charged. That the record establishes Franklin's inability to recall the crime after it occurred does not, standing alone, prove an inability at the time of the offense to appreciate the criminality of his actions, conform his conduct to the law, or form the requisite specific intent.

We therefore conclude that Franklin has not established prejudice under the *Strickland* standard, and cannot be eligible for habeas relief.

## IV. CONCLUSION

The state waived the defense of procedural default even though it did not do so expressly. On the merits, we hold that, although Franklin's counsel represented him in an objectively inadequate manner, Franklin has not demonstrated that he suffered prejudice. We therefore AFFIRM the district court's denial of Franklin's 28 U.S.C. § 2254 habeas petition.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring in part and concurring in the judgment:

I concur in Parts I and III of the court's opinion affirming the district court's denial of Charles Harvey Joseph Franklin's § 2254 habeas petition. I agree that the representation Franklin received, while below our reasonableness standard, did not entitle him to habeas relief. However, because the issue of whether the State waived its procedural default argument is more complicated than the majority allows, I cannot join Part II of the court's opinion.

### I

The court speculates that while a "state shall not be deemed to have waived the *exhaustion* requirement ... unless the state, through counsel, expressly waives

[it]," 28 U.S.C. § 2254(b)(3) (emphasis added), the State can waive its *procedural bar* argument on appeal by failing to raise it in the district court. Quite simply, the majority's analysis of § 2254(b)(3) elevates form over substance by failing to recognize that here the State's procedural bar argument necessarily rests upon Franklin's failure to exhaust his claim in state court.

At bottom, the State argues that Franklin failed to exhaust his claim in state court, and, therefore, by function of Oregon law,[1] it is procedurally barred from our consideration. *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (If "the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the petitioner has committed a "procedural default for purposes of federal habeas."). There *could be no* procedural bar argument in this case without Franklin's failure first to exhaust his claim. Thus, because the State's argument is based upon Franklin's failure to exhaust his claim, which, as a by-product, renders it procedurally barred for our purposes, I would hold that the State did not waive this argument by failing to raise it below. The majority's opinion is able to dance around § 2254(b)(3)'s clear mandate only by failing to recognize the true form of the State's argument.

## II

Part of the difficulty lies in the fact that a "procedural bar" can encompass two different scenarios. The first is illustrated by this case: Franklin failed to exhaust his claim in state court, and now, even if he returned to state court, it would turn him away. As a result, his claim is procedurally barred in federal court. *See Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. 2546. The second scenario encompassed by "procedural bar" occurs not when a habeas petitioner fails to exhaust his claim in state court, but rather when the state court will not hear his claim due to a state procedural bar. For example, if at his state trial Franklin failed to object to the admission of evidence that allegedly violates due process, and state law provided that the failure to lodge a contemporaneous objection to the admission of evidence constitutes a procedural bar for state court purposes, then we, too, would find Franklin's claim procedurally barred in the federal habeas context (if, of course, the state law constituted an adequate and independent state ground to procedurally bar petitioner's claim). *See id.* at 731–32, 111 S.Ct. 2546.

In the second scenario, the exhaustion requirement does not come into play. It is not that a petitioner failed to exhaust his claim; rather, it is that the state court system, based on its own procedural rules, will not hear it. In this instance, I would hold § 2254(b)(3) inapplicable. Or, put another way, a State can waive this type of procedural bar on appeal by failing to raise it in the district court. This is *not* so, however, in the first scenario, where the procedural bar argument rests entirely upon and cannot exist independent from the petitioner's failure to exhaust.

The majority cites *Jackson v. Johnson,* 194 F.3d 641 (5th Cir.1999), to support its holding, but that case does not undermine my analysis. *Jackson* dealt with the *second* type of procedural bar I described above, *i.e.,* that which does not involve a petitioner's failure to exhaust. *Id.* at 651–52. *Jackson* recognizes, and I agree, that the "exhaustion requirement is related but distinct from that of procedural default," *id.* at 652 n. 35, but this observation is not determinative for § 2254(b)(3) purposes when the petitioner's failure to exhaust has

---

1. *See* Or.Rev.Stat. § 138.550(3).

the incidental consequence of procedurally barring his claim in federal court. The majority's reading of *Jackson* ignores this nuanced, but important, distinction.

Finally, I note that as a practical matter, the court's "discussion" of this issue in Part II is just as the majority recognizes—"discussion." *Supra* at 1233. It is unnecessary to its holding, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), and, thus, dictum.

### III

Because this case involves a procedural bar in name only, and actually is based upon Franklin's failure to exhaust his claims in state court, I believe that § 2254(b)(3) applies to protect the State from its failure to raise this argument in the district court. As such, I would hold Franklin's claim procedurally barred and affirm the denial of his habeas petition on that ground. In any event, I do agree that, on the merits of his claim, he did not receive unconstitutionally deficient representation.

For that reason, I respectfully concur in Parts I and III of the opinion and concur in the judgment.