**Raymond Alford BRADFORD,**
**Petitioner—Appellant,**

v.

**Robert L. AYERS, Warden,**
**Respondent—Appellee.**

No. 03–15474.

D.C. No. CV–99–03613–SBA.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 2004.

Submission Vacated May 5, 2004.

Resubmitted, Feb. 2, 2005.

Decided Feb. 7, 2005.

Raymond Alford Bradford, Reg# H-16258, Corcoran, CA, pro se.

Amitai Schwartz, Elizabeth S. Letcher, Law Offices of Amitai Schwartz Watergate Towers, Emeryville, CA, Catherine A. Rivlin, Pamela K. Critchfield, Office of the California Attorney General, San Francisco, CA, for Respondent-Appellee.

Before T.G. NELSON, W. FLETCHER, and BERZON, Circuit Judges.

## MEMORANDUM*

Raymond Alford Bradford ("Bradford") appeals the district court's dismissal of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. This court reviews de novo a district court's decision to deny a habeas petition. *Killian v. Poole*, 282 F.3d 1204, 1207 (9th Cir.2002), *cert. denied*, 537 U.S. 1179, 123 S.Ct. 992, 154 L.Ed.2d 927 (2003). As the facts are familiar to the parties, we do not recite them here except as necessary to understand our disposition.

We reverse the district court's decision with respect to the due process claim as it relates to the prejudicial nature of the videotapes, but only as to the counts alleging that Bradford headbutted an officer on July 25, 1996, that he battered an officer on February 8, 1997, and that he spit on officers on March 21, 1997.[1] We affirm the district court's denial of Bradford's due process claim arising out of the alleged discovery violation.

## I. Prejudicial Nature of the Tapes

■ We conclude that the content of the videotapes, depicting Bradford as, even in a prison environment, an uncontrollable and degraded being, was so prejudicial as to render Bradford's trial fundamentally unfair, in violation of the Due Process Clause.[2] *See Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991).

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We do not reach the ineffective assistance of appellate counsel claim, as we find merit in the underlying claim regarding the prejudicial videotapes and conduct a harmless error analysis similar to the prejudice inquiry required to establish a Sixth Amendment ineffective assistance violation. To prevail on his Sixth Amendment claim, Bradford would have to show inadequate performance by appellate counsel, and that there was a "reasonable probability" that the inadequate performance affected the outcome. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Bradford could fare no better under *Strickland* than under *Brecht*, as the "reasonable probability" standard demands a greater showing than the *Brecht* prejudice standard. *See Kyles v. Whitley*, 514 U.S. 419, 435–36, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (noting that *Kotteakos* harmless error standard, adopted in *Brecht*, is lower than the "reasonable probability" standard).

2. The warden has argued that the limited scope of Bradford's trial objections supports his position regarding the merits of the due process claim. Appellee Br. at 17. Appellee has not, however, argued in this court a procedural default affirmative defense, *see id.* at 2–3 (Statement of Issues), and has, therefore, waived any such argument. *See Franklin v.*

The acts underlying the present convictions were depicted on the videotape in mere minutes. The jury, however, watched an hour of video that included hearsay statements about Bradford's alleged misconduct days before and showed Bradford being gassed, stripped naked, tackled, and tied to a gurney while making bizarre and offensive statements. The vast majority of the material was irrelevant to the charges before the jury. Overall, the videotapes created a "prejudicial effect [that] far outweigh[ed] [their] probative value." *United States v. LeMay,* 260 F.3d 1018, 1026 (9th Cir.2001).

The very extensive extra footage does not, as the state argues, provide mere background evidence for the jury to consider. The jury did not need to view as "background" scenes like the one of Bradford, strapped on a gurney, being wheeled down a hallway while making bizarre statements and singing. The sound of Bradford hurling insults, including racial epithets, at the officers while they attempted to control him also did not provide relevant background evidence. The prejudicial nature of the tapes was compounded by references to irrelevant portions in the state's closing argument. The prosecutor cited statements made by prison officials on the tape concerning the circumstances that gave rise to the "extraction," stating that Bradford had broken sprinklers and referring to Bradford's "pattern of behavior," and, in clear reference to the videotapes, specifically advised the jury to "trust the things we see." The highly prejudicial nature of the tapes understandably triggered Bradford's apologies to the jury for the offensive remarks they had heard on the videotapes, further highlighting the prejudicial content for the jury. Finally, whether or not a cautionary instruction instructing the jury to disregard the prejudicial portions of the tape could have remedied the damage—a question we have no occasion to decide—the trial court gave no cautionary instruction to the jury concerning the irrelevant, prejudicial portions of the videotapes. Showing the tapes in their entirety therefore violated Bradford's due process rights.

## II. Harmless Error Analysis

The error in allowing the full showing of the tapes was an evidentiary one that "occurred during the presentation of the case to the jury," *Arizona v. Fulminante,* 499 U.S. 279, 307, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The presentation of the tapes therefore did not give rise to a structural error. *Id.* at 306–08; *Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004) ("The overwhelming majority of trial errors are non-structural and do not trigger habeas relief...."). The harmless error standard announced in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), whether "the error had substantial and injurious effect or influence in determining the jury's verdict," therefore guides our analysis. *See McKinney v. Rees,* 993 F.2d 1378, 1385–86 (9th Cir. 1993).

There was no *Brecht* prejudice with regard to the seven charges that Bradford spit on, and threw fecal matter, urine, and/or alcohol on correctional officers on July 25, 1996. The evidence against Bradford for these charges was both substantial and contested only by Bradford's own statements. Several officers testified about the events, the videotapes depicted these events, and testing of some uniforms by the Department of Justice confirmed that they were contaminated with fecal matter. There is no realistic chance that,

*Johnson,* 290 F.3d 1223, 1231 (9th Cir.2002) (holding that pre-AEDPA law regarding waiver of procedural bars applies to habeas petitions raised under AEDPA).

absent the highly prejudicial portions of the videotapes, the jury's conclusion would have been different as to these counts. Similarly, as to the count charging Bradford with "resistive" activity, the videotape captured the relevant events. Given this relevant, definitive evidence, the jury would have found Bradford guilty with or without the overly prejudicial portions of the videotapes.

■ Bradford can show *Brecht* error, however, as to the claims charging that he headbutted an officer on July 25, 1996, that he threw urine and/or water on Officer Bevan on February 8, 1997, and that he spit on officers on March 21, 1997. On these four counts, the evidence of guilt was not overwhelming, and the jury's determination of Bradford's credibility could well have been determinative. The tape shows, for example, that Bradford had a colorable defense to the headbutting charge—that he had no intent to commit a battery but simply reacted instinctively when Officer Schultz held him under the shower for decontamination purposes. A jury not prejudiced by the irrelevant portions of the video could have believed Bradford's contention that he did not have the requisite mens rea for this charge.

Similarly, with regard to the February 8, 1997 battery, the only evidence before the jury was the competing testimonial accounts of Bradford and Officer Bevan. Bradford suggested that Bevan's failure to mention the presence of other officers during the battery in his report cast doubt on Bevan's testimony that they were there. If Bradford's character and status had not been thoroughly degraded by the highly prejudicial videotape showings, the jury could have believed his version of events

over Bevan's. The same is true with regard to the March 1997 spitting incident. While the video depicts the alleged incident, the tape is so unclear that the trial judge asked the prosecutor to identify which portion showed the spitting, as the spitting was not apparent on the tape. The only other evidence was testimony by the officers, making the issue one of credibility. As with the headbutting count, a jury not prejudiced by highly prejudicial video footage might well have believed his version of events.

In sum, we conclude that Bradford has established *Brecht* error as to the four counts that refer to the 1996 headbutting, the events of February 1997, and the events of March 1997.

## III. Discovery Violation

■ Bradford also contends that the prosecutor violated his due process rights by failing to deliver the videotapes to him before trial, resulting in his inability to watch the videotapes until the lunch break of the first day of his trial.[3] When a criminal defendant argues that the prosecution disclosed evidence so late as to violate due process, "we consider the prosecution's reasons for late disclosure, ... and whether the defendant had an opportunity to make use of the disclosed material." *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir.1987) (internal citation omitted). We cannot say Bradford was deprived of due process by the timing of the videotape disclosure.

Bradford maintains that his late viewing of the tapes left him unable to plan his overall defense strategy with consideration of the videotapes in mind and to formulate

---

**3.** Before trial, Bradford moved for discovery under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We assume, without deciding, that Bradford was constitutionally entitled to discover the videotapes, as the respondent does not question this proposition.

thoughtfully a discussion of the tapes in his opening statement and questioning of early witnesses. Bradford has not, however, presented facts sufficient to establish a due process violation in this regard. Among the evidentiary gaps, we have no evidence concerning (1) when the prosecutor formed the plan to use the tapes; and (2) when Bradford was informed of the decision to use the tapes. The prosecutor stated that the reason Bradford had not yet seen the tapes was that he "didn't follow the normal procedures to see [them]," indicating that Bradford had earlier been notified that the tapes were to be used. Bradford presented no contrary evidence. Moreover, Bradford did not request a continuance so that he would have more time to better prepare a response to the videotapes. *See id.* (noting that failure to "mitigate . . . surprise or prejudice" by asking for a continuance undermined petitioner's claim). Given the indeterminate state of the record, Bradford has failed to establish that the state unreasonably concluded that his due process rights were not violated. We affirm the district court's finding on this discovery issue.

## IV. Conclusion

On remand, we order the district court to issue the writ of habeas corpus as to the four counts specified, unless, within a time period to be specified by the district court, the state indicates that it will re-try Bradford on those counts or submits to the state court a petition for re-sentencing excluding those counts.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**