**Vince William RAZO, # A4015368,
Plaintiff,**

**v.**

**T. THOMAS, Defendant.**

No. CV 09–00462 SOM–KSC.

United States District Court,
D. Hawai'i.

March 12, 2010.

Order Denying Motion to Amend
May 18, 2010.

Vince William Razo, Eloy, AZ, pro se.

Richard K. Minatoya, Office of the Prosecuting Attorney, Wailuku, HI, for Defendant.

### ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATION

SUSAN OKI MOLLWAY, Chief Judge.

Findings and Recommendation having been filed and served on all parties on February 10, 2010, and no objections having been filed by any party,

IT IS HEREBY ORDERED AND ADJUDGED that, pursuant to Title 28, United States Code, Section 636(b)(1)(C) and Local Rule 74.2, the Findings and Recommendation are adopted as the opinion and order of this Court.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. *See* 28 U.S.C. § 2253(c)(2).

APPROVED AND SO ORDERED.

### FINDINGS AND RECOMMENDATION TO DENY PETITION

KEVIN S.C. CHANG, United States Magistrate Judge.

Before the court is pro se Petitioner Vince William Razo's petition for writ of habeas corpus (Petition) brought under to 28 U.S.C. § 2254, and referred to this court pursuant to 28 U.S.C. § 636(b). For the following reasons, the court FINDS

that the Petition is without merit and RECOMMENDS that it be DENIED with prejudice.

## I. *BACKGROUND*

### A. Trial

On March 23, 2004, a jury of the Circuit Court of the Second Circuit, State of Hawaii (circuit court), found Razo guilty of Promoting a Dangerous Drug in the Second Degree (PDD2)(possession of at least 1/8 ounce of methamphetamine) (Count 1);[1] Prohibited Acts Related to Drug Paraphernalia (Count 2);[2] Promoting a Detrimental Drug in the Third Degree (PDD3) (possession of marijuana) (Count 3);[3] and Attempted Promoting a Dangerous Drug in the First Degree (Attempted PDD1) (Count 4).[4] On May 24, 2004, the circuit court issued an amended final judgment of conviction and sentence, merging Count 1 with Count 4, and sentencing Razo to twenty years imprisonment on Count 4, five years imprisonment on Count 2, and thirty days imprisonment on Count 3, to run concurrently. (Resp.'s Ex. R.)

### B. Direct Appeal

Razo appealed, claiming that jury instructions # 19 and # 26, defining PDD2 and Attempted PDD1, were erroneous and that there was insufficient evidence to sustain his Attempted PDD1 conviction. Razo did not challenge the convictions or sentences imposed on Counts 2 and 3.

On September 8, 2006, the Hawaii Intermediate Court of Appeals (ICA) affirmed

Razo's conviction. The ICA held that: (1) in light of Razo's and other testimony and evidence adduced at trial, the evidence was sufficient to support the Attempted PDD1 conviction; (2) the Attempted PDD1 jury instruction # 26, although not endorsed by the ICA, was nonetheless sufficient and any error was harmless beyond a reasonable doubt; and (3) although the PDD2 jury instruction # 19 was erroneous, the error was harmless beyond a reasonable doubt because (a) Razo testified that the substance found in his backpack was more than 1/8 of an ounce of methamphetamine; and (b) the PDD2 charge was merged with the Attempted PDD1 charge, which the court had affirmed, rendering the PDD2 jury instruction challenge moot. The Hawaii Supreme Court denied *certiorari* on January 29, 2007.

### C. Rule 40 Petition for Post–Conviction Relief

On March 30, 2007, Razo, proceeding pro se, filed a petition for post-conviction relief, pursuant to Hawaii Rules of Penal Procedure (HRPP) Rule 40. Razo claimed ineffective assistance of counsel (IAC) for his appellate counsel's failure to raise federal constitutional issues on appeal, thereby allegedly prejudicing Razo's ability to challenge his conviction in federal court.[5] Razo later added seven supplemental Addendum issues, unconnected to his IAC claim.[6]

▮ The circuit court denied the Rule 40 Petition, holding first that Razo's appel-

---

1. *See* Hawaii Revised Statutes (HRS) § 712–1242(1)(b)(i) (1993).

2. *See* HRS § 329–43.5(a) (1993).

3. *See* HRS § 712–1249(1) (1993).

4. *See* HRS § 705–500 (1993) & § 712–1241(1)(b)(ii)(A) (Supp.2003).

5. The omitted federal issues were: (1) a Fifth Amendment claim alleging a *Miranda* viola-

tion; (2) an Eighth Amendment claim alleging insufficient evidence for Attempted PDD1; and two Fourteenth Amendment due process claims, based on allegedly erroneous (3) PDD2 jury instruction # 19; and (4) PDD1 jury instruction # 26.

6. These were: (1) a speedy trial violation under the federal and state constitutions; (2) insufficiency of the evidence; (3) statute of limitation violation; (4) inaccurate weight

late counsel was not ineffective under Hawaii's standard for evaluating IAC claims.[7] Specifically, appellate counsel was not ineffective for failure to raise: (1) a *Miranda* claim, because the trial court conducted an extensive pre-trial voluntariness hearing and determined that Razo's statements were knowing and voluntary; (2) an insufficiency of the evidence claim under the Eighth Amendment, because this claim was patently frivolous; and (3) federal due process claims concerning jury instructions # 19 and # 26, because these claims were without merit under the prevailing federal standard and were raised and rejected on direct appeal, procedurally barring further review under HRPP 40(a)(3) and (g)(2).[8] The circuit court then held that Razo's seven Addendum issues were each waived under HRPP 40(a)(3) for failure to raise them on direct appeal, and thus, were procedurally barred. The circuit court additionally found that Addendum issues 1 and 6 were raised and ruled upon prior to trial,

2, 4, and 5 were patently frivolous, and 3 and 7 were meritless.

Razo appealed, raising six points of error: (1) ineffective assistance of appellate counsel for failure to argue federal constitutional issues, denying him due process under the Fourteenth Amendment; (2) Speedy trial violation under HRPP 48, in violation of the Sixth Amendment and the due process clause of the Fourteenth Amendment; (3) insufficient evidence to convict for Attempted PDD1; (4) statute of limitation violation; (5) inaccurate measurement of the evidence; and (6) improper identification of the evidence.

On January 23, 2009, 119 Hawai'i 467, 2009 WL 154480, the ICA affirmed, holding that each of Razo's points on appeal were procedurally defaulted and therefore barred from review. Specifically, the ICA held: (1) Razo's failure to support his IAC and statute of limitation claims with supporting facts or argument waived them under Hawaii Rules of Appellate Procedure (HRAP) 28(b)(7);[9] (2) Razo's failure

---

measurement of the evidence; (5) improper identification of the evidence; (6) coerced confession; and (7) double jeopardy.

7. In Hawaii, counsel is ineffective when his or her performance contains specific errors or omissions reflecting a lack of skill, judgment or diligence and such errors resulted in either the withdrawal or substantial impairment of a potentially meritorious defense, specifically rejecting the federal requirement of actual prejudice. *See Briones v. State,* 74 Haw. 442, 848 P.2d 966, 977 (1993), *compare Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that counsel is ineffective when his or her performance was objectively unreasonable and actually prejudiced the defense).

8. HRPP 40(a)(3) states:
 *Inapplicability.* Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly

failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.
HRPP 40(g)(2) states:
(g) **Disposition.**
(2) *Against the Petitioner.* The court may dismiss a petition at any time upon finding the petition is patently frivolous, the issues have been previously raised and ruled upon, or the issues were waived. The court may deny a petition upon determining the allegations and arguments have no merit.

9. HRAP 28(b)(7) states:
 (b) **Opening Brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing

to raise his speedy trial claim on direct appeal, and establish extraordinary circumstances for this, waived the claim under HRPP 40(a)(3), and Razo failed to establish circuit court error in denying the pre-trial motion to dismiss on this issue; (3) Razo's insufficient evidence claim was raised and rejected on direct appeal and further relief was unavailable under HRPP 40(a)(3); and (4) Razo's failure to raise his improper admission of the police expert's testimony regarding the weight and composition of the drug evidence claim on direct appeal, and to establish extraordinary circumstances for this, waived the claim under HRPP 40(a)(3), and Razo admitted to possessing 1/8 of an ounce of methamphetamine, thus any error regarding admission of this testimony was harmless beyond a reasonable doubt. The Hawaii Supreme Court denied *certiorari* on February 23, 2009.

## II. *LEGAL STANDARD*

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *Woodford v. Garceau*, 538 U.S. 202, 204, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003); *Brown v. Farwell*, 525 F.3d 787, 792 (9th Cir. 2008). Under the AEDPA, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529

U.S. 362, 402–04, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ A decision is contrary to federal law if the state court applies a rule of law that contradicts Supreme Court precedent or makes a determination contrary to a Supreme Court decision on materially indistinguishable facts. *Brown*, 525 F.3d at 792. A state court unreasonably applies federal law when its application of Supreme Court precedent to the facts of petitioner's case is objectively unreasonable. *Id.* at 793 (citation omitted). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir.2007) (*quoting Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); 28 U.S.C. § 2254(e)(1)).

■ Relief may be granted on a federal habeas petition only if the state court error caused "actual prejudice" or had a "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In other words, relief may not be granted if a petitioner merely shows that there is a reasonable possibility that the error contributed to the verdict. *Id.*

## III. *DISCUSSION*

The Petition raises four somewhat cryptic grounds for relief: (1) appellate counsel was ineffective for failing to raise (unspecified) federal issues on direct appeal, hindering Razo's ability to pursue federal habeas relief (Ground One); (2) a speedy trial violation under HRPP 48, for the

---

the following sections in the order here indicated:

\* \* \*

(7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.... Points not argued may be deemed waived.

alleged failure to commence trial within "the 180 days allowed by law" (Ground Two); (3) "Evidence which led to conviction" (Ground Three); and (4) "Attempt to Distribute" (Ground Four).

## A. The State's Waiver of Exhaustion and Procedural Default Defenses

A petition for writ of habeas corpus may not be granted unless the petitioner has exhausted available state court remedies. 28 U.S.C. § 2254(b); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A claim is exhausted when: (1) no remedy remains available to the petitioner in state court; or (2) there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. 28 U.S.C. § 2254(b)(1)(A-B).

■ To properly exhaust state remedies, a petitioner must "fairly present his claim in *each* appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29, 124 S.Ct. 1347 (emphasis added); *see also Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). To fairly present a claim, the petitioner must adequately describe its factual or legal bases and alert the state court "that . . . [he is] asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365–366, 115 S.Ct. 887; *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Mere similarity between a claim raised in state court and a claim raised in a federal habeas petition is insufficient. *Duncan*, 513 U.S. at 365–366, 115 S.Ct. 887.

■ In some instances a claim can be technically exhausted even though the state court did not address its merits. This is referred to as "procedural bar" or "procedural default." A claim is procedur-

ally defaulted if the state court declined to address the issue on its merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* Procedural bar provides an independent and adequate state-law ground for the conviction and sentence and prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings, or actual innocence. *Gray v. Netherland*, 518 U.S. 152, 161–162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *see also Murray v. Carrier*, 477 U.S. 478, 485–495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Franklin*, 290 F.3d at 1231.

■ To summarize, failure to exhaust and procedural default are distinct, yet interrelated concepts. *See Franklin*, 290 F.3d at 1230–1231. Under both doctrines, however, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default . . . the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

■ Exhaustion and procedural default are affirmative defenses. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003); *Franklin*, 290 F.3d at 1239. While the state must explicitly waive an exhaustion defense, *see* § 2254(b)(3), procedural default may be waived by the state's failure to raise it in the first responsive pleading to a federal habeas petition. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th

Cir.2005) (citing Fed.R.Civ.P. 8(c), 12(b) & (g)); [10] *Chaker v. Crogan,* 428 F.3d 1215, 1220–21 (9th Cir.2005) (citing *Franklin,* 290 F.3d at 1229); *Batchelor v. Cupp,* 693 F.2d 859, 864 (9th Cir.1982) ("the state's representative is in the best position to identify the procedural default and argue in federal court that the state has an interest in barring federal review of the merits.").

Respondent expressly waives an exhaustion defense here. *See* Ans. at 20 ("Razo properly exhausted the grounds for relief in his Petition."). Although it is clear that several of Razo's claims were never fairly presented as federal claims to the state courts, thus, they were never "properly exhausted," these claims are now procedurally barred and are therefore technically exhausted. Inexplicably, however, despite clear and abundant evidence in the record to the contrary, Respondent waived any procedural default defense by failing to argue this defense in its Answer.

The court therefore addresses Razo's claims on their merits and looks to the last reasoned state court decision to determine how the AEDPA applies to the determina-

tion. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (explaining that a federal habeas court must look to the last reasoned state decision that ruled on an issue beyond the context of procedural default to determine the merits of a claim); *see, e.g., Bailey v. Rae,* 339 F.3d 1107, 1112–13 (9th Cir.2003) (explaining that, where procedural default is not at issue, identifying the last explained decision is relevant for purposes of applying AEDPA's standards); *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir.2002) ("In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision.").

**B. Grounds Three and Four: Insufficient Evidence to Convict for Attempted PDD1** [11]

■ In his Memorandum in Support, Razo explains that Grounds Three and Four center on his allegations that there was insufficient evidence to convict him of Attempted PDD1 under HRS § 712–1241 (Supp. 2003) & § 705–500 (1993).[12] Razo argues that the evidence was insufficient

---

**10.** The Federal Rules of Civil Procedure apply to habeas cases to the extent that they are not inconsistent with the Habeas Rules. Fed. R.Civ.P. 12; 28 U.S.C. § 2254.

**11.** The court addresses these claims first because a determination here also bears on whether Razo's appellate counsel was ineffective.

**12.** When Razo was convicted, these statutes provided in relevant part:

§ 712–1241 **Promoting a dangerous drug in the first degree.** (1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

\* \* \*

(b) Distributes:

\* \* \*

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(A) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

§ 705–500 **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:

\* \* \*

(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

\* \* \*

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

to show that he took a substantial step in the predicate offense of PDD1, to sustain a conviction for Attempted PDD1.

■ When presented with an insufficiency of the evidence claim on habeas review, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Sufficiency claims are judged by the elements defined by state law. *Id.* at 324, n. 16, 99 S.Ct. 2781. This inquiry does not require the federal habeas court to substitute its own judgment for that of the trier of fact. *Id.* at 318–19, 99 S.Ct. 2781; *Juan H. v. Allen,* 408 F.3d 1262, 1278 n. 14 (9th Cir.2005) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The district court should look to state law to establish the elements of the crime, "and then turn to the federal question of whether the [state court] was objectively unreasonable in concluding that" sufficient evidence supported the conviction. *Id.*

At trial, the prosecution adduced evidence that Razo possessed 25.9 grams of methamphetamine divided into eight plastic packets, approximately forty empty plastic packets that are commonly used to distribute methamphetamine, the larger packets sufficient to hold 1/8–1/4 ounces of methamphetamine, the smaller packets sufficient to hold 1/2–1 gram of methamphetamine, a gram scale, measuring spoons, straws, marijuana, and other drug paraphernalia. (Resp.'s Ex. M, 42–76.)

Maui Police Officer Esperanza, who was a Vice Narcotics Division police officer for approximately two years at the time of trial, opined that the evidence, including the excessive amount of methamphetamine seized, the gram scale, the different-sized plastic bags used for repackaging the methamphetamine, the measuring spoons, the straws, the street value of the drugs, and Razo's statements that he was "fronted" half the drugs, indicated that Razo was a dealer.

Razo's theory at trial was that he was a methamphetamine addict but not a distributor, therefore he did not contest Counts 1 through 3, charging him with possession of 1/8 ounce or more of methamphetamine, marijuana, and drug paraphernalia, but only contested Count 4, the Attempted PDD1 charge. (*See* Resp.'s Ex. N, 39:1–3.)[13] Razo admitted that he: bought methamphetamine in large quantities numerous times, owned the gram scale recovered during the search, owned the plastic packets, knew that there was almost an ounce of methamphetamine in his backpack when it was seized, and was a daily methamphetamine user. (*Id.* 41:10–20; 42:12–18, 54:23–25; 55:1–2; 59:5–9; 93:1–13.) Razo, however, testified that he bought methamphetamine by the ounce for his own personal use, then weighed and divided it into smaller packets to prevent an overdose and to save money.

On direct appeal, the ICA held that:

When viewed in the light most favorable to the prosecution, *State v. Tamura,* 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), it was reasonable for the jury to infer that: 1) Razo was a methamphetamine dealer; 2) Razo had purchased the methamphetamine found in his back-

---

13.
Q. (Razo's Attorney) Are you blaming anybody else for counts one two and three in the indictment in this case?

A. (Razo) No, I'm not.

pack with the intent to sell a portion to pay for the half-ounce that his supplier had fronted; 3) Razo intended to sell at least one-eighth ounce, given the amount of money he owed his supplier and the evidence regarding the prices at which different quantities of methamphetamine were sold; and 4) Razo had obtained the methamphetamine and the empty plastic packets, as well as the digital gram scale and the measuring spoon seized by the police, as a substantial step in a course of conduct intended to culminate in the distribution of at least one-eighth ounce of methamphetamine. We conclude that there was sufficient evidence to support Razo's Attempted PDD1 conviction.

(Resp.'s Ex. W, State v. Razo, No. 26604, 6–7, 111 Hawai'i 454, 2006 WL 2578984 *1–*2 (unpub.) (Haw.App. Sept. 8, 2006).)

The ICA's analysis of Razo's sufficiency of the evidence claim was not contrary to nor an unreasonable application of clearly established federal law. Although it did not cite the Supreme Court's ruling in Jackson, the ICA's decision was consistent with the principles set forth in Jackson. The ICA carefully addressed Razo's sufficiency of the evidence claim, as well as Razo's erroneous Attempted PDD1 jury instruction claim, in light of the elements required to prove Attempted PDD1. The ICA reviewed the evidence, drew all inferences in favor of the prosecution, and held that the evidence was strongly corroborative, thus sufficient, to show that Razo took a substantial step toward committing PDD1. This holding necessarily incorporated the Jackson inquiry and implies a finding that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Razo argues that, because Esperanza had only been a narcotics officer for approximately six months when he arrested Razo, Esperanza did not have sufficient experience to opine that the evidence sug-gested that Razo was a drug dealer rather than simply a drug user, rendering Esperanza's testimony "speculative" and "hearsay." (Pet'r Reply at 2.) This argument fails because the record reflects that Esperanza had been a vice narcotics officer for two years prior to Razo's trial, when Esperanza gave his professional opinion regarding the evidence seized. Moreover, Esperanza testified as to when he became a narcotics officer, and the jury nonetheless credited Esperanza's testimony over Razo's, a determination that is entitled to great deference. See Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir.2004) (holding that "a jury's credibility determinations are entitled to near-total deference.")

Razo next argues that the ICA failed to follow the precedent established in State v. Ugalino, 111 P.3d 39, 107 Hawai'i 144 (Haw.App.2005) and other out-of-state cases that Razo alleges are directly on point, wherein the evidence was found to be insufficient. In Ugalino, the ICA held that the evidence was insufficient to show that Ugalino had taken a substantial step to convict him of Attempted PDD1, "based on the particular evidence adduced at Ugalino's trial[.]" Id. at 53 (emphasis added). The evidence showed that Ugalino was a methamphetamine user who possessed 17.44 grams of methamphetamine, eight empty ziplock packets capable of holding .5 grams of methamphetamine but normally used to hold only .1–.2 grams, 2 packets with residue, $1,551, a glass smoking pipe, and a lighter. The State failed to adduce evidence showing how much methamphetamine Ugalino had sold or consumed in the past, the quantity of methamphetamine that a typical user would hold for consumption, and how much of the 17.44 grams of methamphetamine Ugalino would likely use versus how much he would sell. The ICA held that, based on the expert's testimony about the size of the empty packets, and the lack of any other

corroborating evidence, the jury could only infer that Ugalino intended to distribute less than 1/8 ounce of methamphetamine. *Ugalino*, 111 P.3d at 53–54.

These facts are not "on point" with the facts presented at Razo's trial. Razo's evidence showed that he had bought large (ounce) quantities of methamphetamine numerous times, consumed up to 1/8 ounce of methamphetamine per day at times, possessed approximately 25 grams of methamphetamine when arrested, a gram scale, measuring spoons and straws, and 40 empty plastic packets. Esperanza testified to the amount of methamphetamine a typical user would consume, the amount a typical user would hold for consumption, the street value of the methamphetamine found in Razo's possession, and that the twenty large plastic packets would hold 1/8–1/4 ounces while the smaller packets would hold 1–.5 grams of methamphetamine. This evidence is more than sufficient, under *Ugalino* and the other cases Razo cited, for a reasonable jury to find the intent to distribute 1/8 ounce or more of methamphetamine, and for the ICA and the Hawaii Supreme Court to discount Razo's challenge on this issue.

■■■ Razo also argues that criminologist Julie Wood's testimony as to the weight and composition of the drug evidence was improperly admitted, based on *State v. Cambra*, No. 26746, 115 Hawaiʻi 146, 2007 WL 1169631 (Haw. Apr. 18, 2007), and *Melendez–Diaz v. Massachusetts*, — U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (holding that the admission of laboratory analysts' certificates and affidavits, without the testimony of the analysts themselves, violated petitioner's right to confront the witnesses against him). As noted, Razo admitted that he possessed more than 1/8 ounce of methamphetamine. Thus the admission of Wood's testimony on the weight and chemical composition of the drug evidence had no sub-

stantial or injurious effect on the jury's verdict beyond a reasonable doubt. *See Brecht*, 507 U.S. at 623, 113 S.Ct. 1710.

■■■ Second, insofar as Razo contests an alleged lack of foundation for the accuracy of the testing equipment underpinning Wood's testimony, under *State v. Wallace*, 80 Hawaiʻi 382, 910 P.2d 695 (1996) and *Cambra*, No. 26746, this argument is misplaced. Only "clearly established Federal law," consisting of the holdings of the Supreme Court at the time the petitioner's state court conviction became final, governs federal habeas review. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 365, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Hawaii courts' decisions in *Wallace* and *Cambra* do not constitute clearly established federal law.

To the extent that Razo believes that *Melendez–Diaz* bolsters his argument and transforms it into a federal claim, he is mistaken. The majority in *Melendez–Diaz* explicitly rejected the suggestion that the Confrontation Clause requires that every person whose testimony might be relevant to the authenticity of a sample or accuracy of a testing device must appear in person as part of the prosecution's case. *See* 129 S.Ct. at 2532 n. 1 ("[W]e do not hold, *and it is not the case*, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case") (emphasis added). Because Razo had a full opportunity to confront Wood at trial, there was no Confrontation Clause violation, and as noted, because Razo admitted that he possessed more than 1/8 ounce of methamphetamine, he suffered no prejudice as a result of Wood's testimony on the weight or chemical composition of the evidence. *See id.* at 2542 n. 14 (noting that, despite finding the analysts' certificates violated defendant's Con-

frontation Clause rights, the resulting error was subject to harmless error review).

■ This court does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, *see Payne v. Borg,* 982 F.2d 335, 338 (9th Cir.1992), but only "whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id.* (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). The court FINDS that the evidence was sufficient for the jury to find that Razo was guilty of Attempted PDD1 beyond a reasonable doubt, and that the ICA's determination of this issue was neither contrary to nor an unreasonable application of federal law. The court therefore RECOMMENDS that Grounds Three and Four be DENIED WITH PREJUDICE.

## C. Ground One: Ineffective Assistance of Appellate Counsel

■ Razo asserts, without further explanation or statement of facts, that his appellate counsel was ineffective for failing to "address the Federal Constitutional violations in the Direct Appeal, thereby hindering appellant to pursue further Review by Federal District Court on the merits at issue." (Pet. at 6.) Razo does not specify in his Petition, Memorandum in Support, or Reply what federal issues his appellate counsel failed to address, or explain how the omission of these unspecified federal issues constituted ineffective assistance of appellate counsel.

### 1. Razo's IAC Claims Are Unsupported and Conclusory

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) requires a federal habeas petition to state the facts supporting each ground for relief. Habeas Rules 2(c)(2); *see also Mayle v. Felix,* 545 U.S. 644, 654–55, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (Habeas Rule 2(c) imposes "a more demanding" pleading standard than the Federal Rules of Civil Procedure require for ordinary civil cases). Habeas Rule 2(c) instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground." Additionally, the court's form petition directed Razo to "[s]tate every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.... State the *facts* supporting each ground." (Pet. at 6.)

■ A federal habeas petitioner "is expected to state facts that point to a real possibility of constitutional error." *Wacht v. Cardwell,* 604 F.2d 1245, 1247 (9th Cir.1979). Moreover, " '[t]he Court is not required to sift through the state court records of habeas [petitioners] . . . to determine whether sufficient facts exist to support the claim for relief.' " *Harris v. Carter,* 2009 WL 2253221 *12 (W.D.Wash. Mar. 18, 2009), *as modified by* 2009 WL 1763323 (W.D.Wash. June 18, 2009) (citing *Adams v. Armontrout,* 897 F.2d 332, 334 (8th Cir.1990)). When a habeas claim makes only conclusory allegations, as here, the petitioner is not entitled to federal habeas relief. *See James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations . . . [un-]supported by a statement of specific facts do not warrant habeas relief."); *Jones v. Gomez,* 66 F.3d 199, 204–05 (9th Cir.1995) (same); *see also Cox v. Del Papa,* 542 F.3d 669, 681 (9th Cir.2008) ("Without any specification of the mitigating evidence that counsel failed to unearth, Cox's [IAC] claim must fail."). Razo presents no facts supporting his claim that appellate counsel was ineffective for failure to raise unspecified federal

issues. Accordingly, the court FINDS that Ground One is conclusory and unsupported and RECOMMENDS that it be DISMISSED for failure to state a claim.

### 2. *Razo's IAC Claims Are Meritless*

Alternatively, insofar as Razo alleges the same bases in support of Ground One that he presented to the circuit court,[14] Razo's IAC claims fail on their merits.

To show ineffective assistance of counsel a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (applying *Strickland* to appellate counsel); *Miller v. Keeney,* 882 F.2d 1428, 1433 (9th Cir.1989) (same). After petitioner identifies the acts or omissions that are not the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Second, petitioner must establish that he was actually prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 693–94, 104 S.Ct. 2052. To demonstrate prejudice due to appellate counsel's performance, a petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal. *Miller,* 882 F.2d at 1434 n. 9.

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Pizzuto v. Arave,* 280 F.3d 949, 955 (9th Cir.2002) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

 Appellate counsel is not obligated to raise meritless arguments on a client's behalf. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. Nor does an indigent defendant "have a constitutional right to compel appointed counsel to press non-frivolous points ... if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel "must be allowed to decide what issues are to be pressed[,]" otherwise counsel's professional evaluation would be "seriously undermined." *Id.; see also Smith v. Stewart,* 140 F.3d 1263, 1274 n. 4 (9th Cir.1998) (stating that counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy."). Thus, appellate counsel is not deficient for failing to raise a weak issue. *See Miller,* 882 F.2d at 1434.

#### i. *Fifth Amendment IAC Claim*

 "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const., Amend. 5. A person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These warnings must precede any custodial interrogation. *Id.* at 444, 86 S.Ct. 1602. Once

---

**14.** As noted above, Razo failed to present any facts supporting this claim to the ICA, which denied the claim on that basis.

properly advised of his rights, an accused may waive them voluntarily, knowingly and intelligently. *Id.* at 475, 86 S.Ct. 1602.

■ Whether a waiver of *Miranda* rights is knowing, intelligent, and voluntary is a legal question which the federal court resolves independently. *Miller v. Fenton,* 474 U.S. 104, 115, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). The state court's determination of the underlying facts, however, is entitled to a presumption of correctness. *Id.* at 117, 106 S.Ct. 445; *Villafuerte v. Stewart,* 111 F.3d 616, 626 (9th Cir.1997); 28 U.S.C. § 2254(e)(1). In analyzing the voluntariness of a waiver, the focus is on the absence of police overreaching. *United States v. Cazares,* 121 F.3d 1241, 1244 (9th Cir.1997) (quoting *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). The test for voluntariness is whether, under the totality of the circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Male Juvenile,* 280 F.3d 1008, 1022 (9th Cir. 2002) (citation and internal quotation marks omitted).

■ "However, if interrogators obtained a confession after *Miranda* warnings and a valid waiver, the confession was likely voluntary." *DeWeaver v. Runnels,* 556 F.3d 995, 1003 (9th Cir.2009) (citing *Missouri v. Seibert,* 542 U.S. 600, 608–09, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility.")); *Berkemer v. McCarty,* 468 U.S. 420, 433 n. 20, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare").

■ After a careful review of the transcript of the March 22, 2004 voluntariness hearing, this court agrees with the circuit court's holding that Razo voluntarily, knowingly, and intelligently waived his rights to remain silent before being questioned by the police. (*See* Resp.'s Ex. M 3–41.) The record shows that Razo was twenty-seven years old when he gave the challenged statement, could read and write, and worked full-time for Federal Express. At the hearing, Officer Esperanza testified that Razo: was in custody at the police station; spoke coherently and did not appear intoxicated or impaired; was given a *Miranda* warning and waiver form; read each line aloud and after each line, stated that he understood, so that Esperanza could determine that Razo could read and understand his rights; at the conclusion of this process stated again that he understood his rights and signed and dated the forms. Razo then made an oral statement in response to Esperanza's questions, while Esperanza and Sergeant Kenui took notes, and afterward wrote his statement using Esperanza's notes. Esperanza also stated that it was Sergeant Clarence Kenui's decision whether a suspect would be released pending investigation. Esperanza testified that Razo was never promised that he would be released only if he provided a statement, and that no improper promise was made prior to the *Miranda* warning, or to Razo's waiving his rights or making a statement. This whole proceeding took approximately one hour.

Razo did not dispute Esperanza's recitation of events concerning the reading of his rights. Razo admitted to signing the waiver and giving an oral and a written statement. Razo also claimed that he was not clear-minded when he was arrested due to his methamphetamine habit. Razo stated that he would have said anything to be released, that he was unsure how long he

would be released while the police continued their investigation, but that didn't matter to him because he wanted to be released for any amount of time. Razo also stated that he discussed cooperating with the police and that some of his statements were false. Razo's argument, though not explicit, was that he was coerced to make a statement based on the promise of release pending investigation.

■■■ There is no dispute that Razo read and signed the waiver form. The circuit court made a credibility determination between Razo and Esperanza, and determined that Esperanza's testimony was the more credible. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); 28 U.S.C. § 2254(d)(2); *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) ("A state court's factual determination may not be overturned unless we cannot 'reasonably conclude that the finding is supported by the record.'") (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004)).

■■■ The circuit court's determination of this factual issue was objectively reasonable, and was neither contrary to, nor an unreasonable determination of the facts in light of the evidence presented at the March 22, 2004 voluntariness hearing. Further, even if Esperanza told Razo that he would likely be released pending further investigation before Razo made a statement, but after Razo read and signed the *Miranda* waiver, as Razo testified, this was not a promise that was so coercive as to have overborne Razo's will. Razo was an educated twenty-seven year old gainfully employed adult. He was coherent and attested numerous times that he understood the warnings before he gave any statement. Razo was only in custody for approximately one hour. Razo's fervent hope that he might be released while the police continued investigating his crime simply does not equate to police overreaching.

Finally, even assuming that Razo's confession was involuntary, it did not have a "substantial and injurious effect or influence in determining the jury's verdict," because Razo admitted at trial to substantially the same details as he had made in his statements. *See Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (standard for determining whether habeas relief must be granted is whether error "had substantial and injurious effect or influence in determining the jury's verdict") (citation omitted); *Doody v. Schriro*, 548 F.3d 847, 870–71 (9th Cir. 2008) (applying Brecht harmless error standard to erroneous admission of confession on federal habeas review).

The circuit court's rejection of Razo's IAC claim based on appellate counsel's failure to argue a *Miranda* violation was not contrary to, or an unreasonable application of clearly established federal law and did not constitute an unreasonable determination of the facts in light of the evidence presented. This court finds that Razo was not prejudiced by appellate counsel's failure to raise a *Miranda* claim and that there is no reasonable probability that the appeal would have been decided differently had appellate counsel raised the claim.

### ii. Eighth Amendment IAC Claim

■■■ The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Gregg v.*

*Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Razo does not explain here, nor did he to the circuit court, how his appellate counsel's failure to raise his insufficiency of the evidence claim on appeal violated the Eighth Amendment. This court agrees with the circuit court that this claim is frivolous and finds that appellate counsel was not obliged to raise it on appeal.

*iii. Fourteenth Amendment Due Process Claims Based on Allegedly Erroneous Jury Instructions # 19 and # 26*

 Improper jury instructions constitute grounds for habeas relief under federal law only if the instructions "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt." *Townsend v. Knowles,* 562 F.3d 1200, 1209 (9th Cir.2009). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). The challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole

and the trial record." *Estelle,* 502 U.S. at 72, 112 S.Ct. 475 (internal quotation marks and citation omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton,* 541 U.S. at 437, 124 S.Ct. 1830. The law presumes that the jury follows the instructions given.

 Razo's appellate counsel challenged jury instructions # 19 and # 26 on appeal under state law.[15] The ICA held that, although it did not endorse the Attempted PDD1 instruction, the jury was correctly instructed that the prosecution had to prove that Razo "knowingly distribut[d]" 1/8 ounce or more of methamphetamine, and to prove Attempted PDD1, the prosecution had to prove that Razo "intentionally attempted to distribute" 1/8 ounce of methamphetamine or more. (Resp.'s Ex. W, *State v. Razo,* 2006 WL 2578984 *1–*2.) The ICA then found that "any error in the circuit court's failure to break down the PDD1 offense definition into its elements and the mental state required for each element was harmless beyond a reasonable doubt." *Id.* *2.

As to the PDD2 instruction, the ICA held that, although it was erroneous,[16] because Razo "essentially conceded his guilt on the PDD2 offense" by admitting to possession of at least 1/8 of an ounce of methamphetamine for his own use, "there was no reasonable possibility that any er-

---

**15.** Hawaii's standard for jury instruction challenges closely tracks the federal standard: [E]rroneous instructions are presumptively harmful and are a ground for reversal *unless it affirmatively appears from the record as a whole that the error was not prejudicial.* [E]rror is not to be viewed in isolation and considered purely in the abstract. *It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.* In that context, the real question becomes whether

there is a reasonable possibility that the error may have contributed to conviction. *State v. Cordeiro,* 99 Hawai'i 390, 56 P.3d 692, 705 (2002) (citations and internal quotation signals omitted) (emphasis added).

**16.** The PDD2 instruction was erroneous because it did not require the jury to find that Razo knew the substance he possessed was methamphetamine. *See State v. Razo,* 2006 WL 2578984 *4.

ror in the ... PDD2 instruction contributed to the jury's finding that Razo was guilty" of PDD2. *Id.* at *4.

 First, the ICA's determination on these claims was neither contrary to nor an unreasonable application of federal law. Although it did not cite *Estelle v. McGuire* and its progeny, the ICA's decision was consistent with the principles set forth in *Estelle.* The ICA carefully addressed Razo's jury instruction claims in light of the elements required to prove the two charges, the jury instructions as given, and the entire record, and determined that the PDD1 instruction was sufficient, and the PDD2 instruction, although erroneous, was harmless beyond a reasonable doubt. This holding necessarily incorporated *Estelle's* inquiry and implies a finding that based on the entire record there was no violation of due process. Moreover, Razo cannot simply transform his state jury instruction claims into federal claims simply by now citing to the due process clause. *See Poland v. Stewart,* 169 F.3d 573, 584 (9th Cir.1999) (citing *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.1997)).

 Second, this court must defer to the ICA's determination that the Attempted PDD1 instruction was sufficient. *See Engle v. Isaac,* 456 U.S. 107, 119–21, n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)(stating that a challenge to the correctness of self-defense instruction under state law provides no basis for federal habeas relief). This court lacks the authority to grant habeas relief on Razo's challenge to the Attempted PDD1 jury instructions because the manner in which the state court interprets its own law is an issue of state law. 28 U.S.C. § 2254; *Hendricks v. Vasquez,* 974 F.2d 1099, 1107 (9th Cir.1992); *Mitchell v. Goldsmith,* 878 F.2d 319, 324 (9th Cir.1989)(finding that habeas corpus relief was unavailable for petitioner's claim that jury instructions did not comply with state law).

 Third, because the circuit court merged the PDD2 charge with the Attempted PDD1 charge, and only sentenced Razo for his conviction of Attempted PDD1, there is no PDD2 judgment to challenge under § 2254, and no prejudice attributable to the erroneous instruction. *See* HRS § 701–109(1) [17]; *see also State v. Padilla,* 114 Hawai'i 507, 164 P.3d 765, 774–76 (Haw.App.2007) (concluding that conviction on two charges is permissible under the statute, as long as one charge is dismissed and judgment of conviction and sentence is imposed on only one charge). Although not explicit in the record, based on *Padilla*'s holding, it appears that when the circuit court merged Counts 1 and 4, the PDD2 charge was dismissed. This conclusion is also supported by the ICA's finding that Razo's challenge to the PDD2 instruction was mooted by the merger of the two charges. (*See* Resp.'s Ex. W, *State v. Razo,* 2006 WL 2578984 at *4.)

---

17. HRS § 701–109(1)(1993) provides:

(1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (4) of this section; or

(b) One offense consists only of a conspiracy or solicitation to commit the other; or

(c) Inconsistent findings of fact are required to establish the commission of the offenses; or

(d) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

██ ██ Moreover, under federal law, there is no judgment of conviction until a sentence is imposed. *See Burton v. Stewart,* 549 U.S. 147, 156, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (stating that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment.") (citing *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937)); *see also Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d 1286, 1293 (11th Cir.2007) (stating "Burton makes clear that . . . the judgment of conviction and the sentencing judgment together form the judgment that imprisons the petitioner."), *cert. denied,* —— U.S. ——, 129 S.Ct. 1033, 173 L.Ed.2d 315 (2009) (emphasis in original). For the federal court to have jurisdiction over a § 2254 petition, the habeas petitioner must, as of the date of the filing of the habeas petition, be "in custody" under the sentence/conviction being attacked by the petition. *See, e.g., Maleng v. Cook,* 490 U.S. 488, 492, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). Here, there is no PDD2 conviction or sentence, the erroneous jury instruction is a nullity, Razo has no basis to challenge the instruction, and this court is without jurisdiction over this claim.

Thus, the court finds that appellate counsel's failure to raise due process claims based on the allegedly erroneous jury instructions, when judged by the record as a whole, including Razo's testimony, other testimony adduced at trial, and the circuit court's merger of the PDD2 charge with the Attempted PDD1 charge, was not deficient.

Based on the foregoing the court FINDS and RECOMMENDS that Ground One be DENIED.

**D. Ground Two: Speedy Trial Violation Under Hawaii Law**

██ Razo fails to present any facts, argument or explanation in support of this claim, and for the same reasons as detailed *supra,* § III(C)(1), the court finds and recommends that this claim be dismissed for failure to state a claim. Further, Razo states only that his rights under HRPP 48 were violated when the state allegedly failed to commence his trial "within the 180 days allowed by law." HRPP 48 affords Razo no relief in this federal habeas corpus proceeding. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Accordingly, the court finds and recommends that Ground Two be DENIED.

**IV. CONCLUSION**

The court FINDS that Razo is not being held in violation of the constitution or laws of the United States, and that the state court's determination of his claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The court therefore RECOMMENDS that the Petition be DENIED with prejudice.

IT IS SO FOUND AND RECOMMENDED.

*ORDER DENYING "MOTION TO AMEND JUDGMENT UNDER RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE"*

**I. INTRODUCTION.**

On March 23, 2004, Petitioner Vince William Razo was convicted of drug-related offenses in the Hawaii state-court system. In relevant part, Razo was convicted of Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes section 712–1242(1)(b)(i) (Count 1) and of Attempted Promoting of a Dangerous Drug in the First Degree in violation of Hawaii Revised Statutes sections 705–500 **(criminal attempt)** and 712–1241(1)(b)(ii)(A) (Count 4).

At the time of his conviction, section 712–1242(1)(b)(i) provided:

(1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

. . .

(b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers.

Haw.Rev.Stat. § 712–1242(1)(b)(i) (Michie 2003).

At the time of his conviction, section 712–1241(1)(b)(ii)(A) provided:

(1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

. . .

(b) Distributes:

. . .

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(A) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers.

Haw.Rev.Stat. § 712–1241(1)(b)(ii)(A) (Michie 2003).

On October 1, 2009, Razo filed a petition under 28 U.S.C. § 2254.

On February 10, 2010, Magistrate Judge Kevin S.C. Chang filed his Findings and Recommendation to Deny Petition ("F & R"). This F & R carefully and thoughtfully detailed the facts and law pertaining to Razo's § 2254 petition.

Razo did not timely object to the F & R, and, on March 12, 2010, this court adopted the F & R. Judgment against Razo was issued that same day.

On March 29, 2010, the court received Razo's request for an extension of time, which the court deemed to be an untimely attempt to object to the F & R. The court did not vacate the judgment, but, recognizing that Razo is an incarcerated individual proceeding *pro se*, invited Razo to file a motion under Rule 59 of the Federal Rules of Civil Procedure. The court informed Razo that, in evaluating any such motion, the court would apply the standard that would have been used had Razo timely filed objections to the F & R. *See* Minute Order (March 31, 2010) (Docket No. 32).

On April 12, 2010, the court received Razo's Motion to Amend Judgment Under Rule 59 of the Federal Rules of Civil Procedure. *See* Docket No. 33. Razo objects to the F & R's determination that sufficient evidence supported his convictions based on his possession of a mixture or substance containing an aggregate weight of one-eighth ounce or more of methamphetamine, its salts, isomers, and salts of isomers. After *de novo* review of the sufficiency of the evidence supporting his convictions, and after reviewing for clear error the remainder of the F & R, the court denies Razo's Rule 59 motion.

## II. *STANDARD OF REVIEW.*

 Razo requests relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. The AEDPA imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 334, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003). Under § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

On February 10, 2010, Magistrate Judge Chang issued his F & R. This court told Razo that it would review any objections he had under the normal F & R procedure. That is, this court reviews *de novo* those portions of the F & R to which objection is made and may accept, reject, or modify, in whole or in part, the F & R made by the Magistrate Judge. The court may also receive further evidence on the matter or recommit it to the Magistrate Judge with instructions. The court may accept those portions of the Magistrate Judge's findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b); Local Rules 72.5 and 74.2; *Int'l Longshore & Warehouse Union, Local 142, AFL–CIO v. Foodland Super Market Ltd.,* 2004 WL 2806517, *1 (D.Haw. Sept. 15, 2004); *Stow v. Murashige,* 288 F.Supp.2d 1122, 1127 (D.Haw. 2003), *aff'd,* 389 F.3d 880 (9th Cir.2004); *Abordo v. State of Hawaii,* 902 F.Supp. 1220 (D.Haw.1995); *see also Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974).

## II. BACKGROUND FACTS.

The court adopts and incorporates the facts set forth in the well-reasoned and thorough F & R. As described in detail in the F & R, Razo was convicted of drug-related offenses arising out of drugs found by Maui Police Department officers in his apartment.

At trial, Officer Randy Esperanza testified that, on August 15, 2002, he found drugs in Razo's apartment. *See* Transcript of Proceedings at 43, 52–54 (March 22, 2004) (Ex. M).

Criminologist Julie Wood testified at trial that she had a properly calibrated scale that was certified as accurate before and after she weighed the methamphetamine belonging to Razo. The certification of the scale was also introduced into evidence. *See* Transcript of Proceedings at 45–49 (March 15, 2004) (Ex. L). Woods testified that the methamphetamine weighed 25.956 grams. *Id.* at 51. Woods testified that one-eighth of an ounce equals 3.54 grams. *Id.* Woods performed tests to determine that the substance she weighed was in fact methamphetamine. *Id.* at 52–54.

Razo admitted at trial that he had more than an eighth of an ounce of methamphetamine. *See* Transcript of Proceedings at 92–92 (March 22, 2004) (Ex. N) ("Q: ... you're charged in count one with promoting a dangerous drug in second degree, for having over an eighth of ounce of methamphetamine. You're agreeing that's true, you had that quantity? A: Yes, I had that quantity.").

## III. ANALYSIS.

Razo's only objects to the F & R's conclusion that sufficient evidence supported the jury's determination that he possessed more than one-eighth of an ounce of a mixture or substance containing methamphetamine. After *de novo* review of the record regarding whether the substance found at Razo's home was methamphetamine weighing more than one-eighth of an ounce, the court determines that it properly adopted the F & R, to the extent the F & R determined that sufficient evidence supported his convictions based on possessing more than one-eighth of an ounce of a mixture or substance containing

methamphetamine. Not only did Woods, a criminologist, testify that, based on her tests, the substance was methamphetamine weighing 25.956 grams, but Razo admitted at trial that he possessed more than one-eighth of an ounce of methamphetamine. This testimony was sufficient to support his conviction.

Razo did not object to the other determinations made in the F & R. Having reviewed the remainder of the thorough and well-reasoned F & R for clear error, the court determines that adoption of the remainder of the F & R was proper.

## IV. CONCLUSION.

For the foregoing reasons, the court determines that it properly adopted the F & R and denied Razo's § 2254 Petition. The court therefore denies Razo's "Motion to Amend Judgment under Rule 59 of the Federal Rules of Civil Procedure" (Docket No. 33).

IT IS SO ORDERED.